**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------X
ANEIRA ROSARIO,

                            Plaintiff,

          -against-

TMCNY, INC. d/b/a NEW YORK CITY HARLEY-DAVIDSON, JIM MCMACHAN, and FRED ANTALEK,

                            Defendants.
---------------------------------------------X

**COMPLAINT**

Case No.: _____

PLAINTIFF DEMANDS A TRIAL BY JURY

Plaintiff, Aneira Rosario, by her attorney, The Rose Law Group, PLLC, upon information and belief, complains as follows:

## NATURE OF THE CASE

1. Plaintiff Aneira Rosario ("Plaintiff") complains pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166) ("Title VII") and the New York City Human Rights Law, ("NYCHRL") seeking declaratory judgment, injunctive relief, and damages to redress the injuries Plaintiff has suffered as a result of being retaliated against due to Plaintiff Rosario's **objection to and complaints about sexual harassment and gender discrimination**.

2. Plaintiff also complain pursuant to the Fair Labor Standards Act, 29 U.S.C. §201 *et seq.* ("FLSA") and the New York State Labor Law, Articles 6 & 19 ("NYLL") for failure to pay the minimum wage and an overtime premium for hours Plaintiff was required to report to work, ready to perform work and actually perform work duties. Plaintiff seeks to recover unpaid back wages, the overtime premium, and an additional amount as liquidated damages, reasonable attorneys' fees and costs.

## JURISDICTION AND VENUE

3. Jurisdiction of this action is conferred upon the Court by § 16(b) of the FLSA (29 U.S.C. §216(b)) and 42 U.S.C. § 2000e-5(f)(3). Jurisdiction of this Court is also proper under 42 U.S.C. §12101 et. seq.; 29 U.S.C. §2617.

4. Supplemental Jurisdiction is proper over the State law claims pursuant to 28 U.S. Code § 1367.

5. Venue is proper in this district based upon Defendants' residency within Queens County, State of New York, within the Eastern District of New York. 28 U.S.C. §1391(b).

6. Plaintiff Rosario has filed an EEOC charge on January 14, 2022 and more than 180 days has elapsed since it was filed. A Right to Sue has been requested but not yet issued.

## PARTIES

7. That at all times relevant hereto, Plaintiff Aneira Rosario ("Rosario") is a resident of the State of New York and Queens County.

8. Defendant TMCNY, Inc. ("TMCNY") d/b/a New York City Harley-Davidson is and was a Domestic Business Corporation doing business at 42-11 Northern Blvd, Long Island City, NY 11101.

9. That at all times relevant hereto, Defendant Jim McMachan ("McMachan") was and is a manager for Defendant TMCNY

10. That at all times relevant hereto, Defendant Fred Antalek ("Antalek") was and is a manager for Defendant TMCNY.

11. That at all times relevant hereto, Defendant TMCNY was and is a Domestic Business Corporation duly authorized and existing by virtue of the laws of the State of New York.

## STATEMENT OF FACTS

12. Plaintiff Rosario began working for Defendant TMCNY in or around December of 2020 as a

       Customer Experience Manager.

13. Initially, Plaintiff Rosario worked six (6) days a week with an alternating day off. She worked from 9:00 a.m. to 6:00 p.m.

14. While Plaintiff Rosario worked fifty-four (54) hours each week, she was only paid for a portion of those hours as each paycheck failed to include all hours worked.

15. Further, throughout her employment, Plaintiff Rosario was asked to perform additional work after clocking out which amounted to several hours each week of uncompensated time.

16. Each of those hours would have been in excess of forty (40) and she would have been entitled to the time and a half overtime premium for those hours.

17. In or around May of 2021, Plaintiff Rosario began working six (6) days a week with an alternating day off, working each day from 7:00 a.m. to 7:00 p.m.

18. After this change, working sixty-six (66) hours each week, Plaintiff Rosario was still not paid for all hours worked and was only paid for a portion of them.

19. Additionally, Plaintiff Rosario was told in writing that she would be provided a bonus for maintaining a high customer service rating of $70 per week. While she earned the bonus frequently, she was only paid significantly less than what was promised, sometimes as little as $5 per week. This bonus was wages which are due to Plaintiff Rosario.

20. Throughout Plaintiff Rosario's employment, her work product was excellent. As a result of her excellent performance, she was promoted to the Business Development Center, Marketing Coordinator, and Customer Experience Manager in or around May of 2021.

21. Once employees became aware that Plaintiff Rosario was a manager, several began complaining to her about the discrimination and hostile work environment created by Defendants McMachan, Antalek, and Mr. George Schulteis.

22. They also complained about numerous improprieties in the workplace, including unsafe work

being done on the motorcycles, failure to pay money owed, and failure to keep promises made to both employees and clients.

23. At times, employees complained that Defendant McMachan was insensitive and ignored employees' complaints about Defendant Schulteis putting them down with racial slurs and by fat shaming them.

24. In or around May of 2021, Employee S.M. made a sexual harassment complaint against Defendants McMachan, Antalek, and Mr. Schulteis to Plaintiff Rosario.

25. Employee S.M. explained to Plaintiff Rosario that she had been outside, bringing in a motorcycle while raining. When she entered the business she said out loud "I am wet!" and pointed to her shirt. Defendant McMachan responded, "I hope that's all that's wet", referring to sexual arousal.

26. Employee S.M. also complained Defendant Antalek **patted her in the vaginal area** as a grotesque mean of demonstrating his satisfaction with her job. This assault and battery were not wanted and caused extreme distress.

27. Employee S.M. also complained that Defendant Schulteis discouraged her and put her down by constantly giving her leads away.

28. Employee S.M. informed Plaintiff other female employees were afraid to come forward with their similar complaints of discrimination and harassment.

29. Plaintiff Rosario informed Mr. Matt (Human Resources Director) of Employee S.M.'s complaint.

30. Mr. Matt instructed Plaintiff Rosario to provide his email address so they could complain directly to him.

31. Mr. Matt asked Employee S.M. if the information Plaintiff Rosario stated was true or a "New York sensitive thing."

32. Defendant TMCNY effectively dismissed these complaints and perpetuating an environment where female employees and other employees were harassed and discriminated against without any protection.

33. Shortly after Plaintiff Rosario reported the sexual harassment to Defendant TMCNY's Human Resources employee, Defendant McMachan called Plaintiff Rosario into his office and expressed how betrayed he felt by her. Defendant McMachan stated that he was aware that Plaintiff Rosario was the one who reported the sexual harassment.

34. Plaintiff Rosario received many complaints from workers and clients and asked Defendant McMachan to address them but he would not. Plaintiff Rosario then escalated her complaints to Defendant TMCNY's Human Resources department.

35. Defendant McMachan began retaliating against Plaintiff Rosario immediately after her complaint to Human Resources. Defendant McMachan explicitly told Plaintiff Rosario to mind her business and to focus on other work, effectively telling her to ignore his illegal actions. He further told others false things about her, attempting to get others to dislike her in the workplace.

36. Throughout the Summer of 2021, Defendant Antalek would repeatedly make sexual jokes to all women in the workplace. For example, Defendant Antalek would stare at one female's breasts while talking and when she told him to look at her eyes, he responded by stating "who wants to look at those." On another occasion, Defendant Antalek referred to a new female employee as a "bombshell" and "eye candy."

37. In or around September of 2021, Defendant Antalek approached Plaintiff Rosario in her office. He began talking about how he did not like things in the workplace and he started touching Plaintiff Rosario and touching her bra strap. Defendant McMachan was also in the office and witnessed this. Plaintiff Rosario immediately told him to stop as it was unwanted

5

and harassment. Defendant McMachan did nothing to stop this or otherwise take disciplinary action against Defendant Antalek for clear sexual harassment in the workplace.

38. In or around October of 2021, in retaliation for her opposing his harassment, Defendant Antalek began physically and verbally harassing Plaintiff Rosario by interrupting her constantly, even if he was not part of the conversation, and pulling staff or clients away from her mid-conversation. He would also stand between her and others while they were speaking with his back to her, he would then back up, pushing her away. This was incredibly distressing for Plaintiff Rosario to endure.

39. Defendant Antalek also began acting aggressively to the point that Plaintiff Rosario was fearful for her safety.

40. Plaintiff Rosario complained consistently about this harassment and hostility. Upon information and belief the harassment and hostility was on account of her gender and due to her having opposed Defendant Antalek's sexual harassment.

41. After her consistent complaints about this retaliation and harassment, Defendant McMachan also began physically intimidating Plaintiff Rosario by standing close to her, making her feel unsafe.

42. On November 1, 2021, Plaintiff Rosario complained to Defendants TMCNY and Defendant McMachan because she did not feel safe around Defendant Antalek and did not want to be part of huddles (employee meetings) due to this retaliation and harassment. Plaintiff Rosario had repeatedly been reporting this harassment and retaliation without any response from Defendant McMachan.

43. In or around this time, Defendant McMachan became fearful that Plaintiff Rosario would file a complaint with a government agency due to his and Defendant Antalek's harassment. This was due to Plaintiff Rosario's consistent and repeated opposition to the discrimination and

harassment occurring in the workplace, which other employees noticed or were told by Defendants.

44. Upon information and belief, one employee told Defendant McMachan that Plaintiff Rosario would be filing a complaint with a government agency.

45. On November 2, 2021, Defendant McMachan terminated Plaintiff Rosario in retaliation for Plaintiff Rosario's repeated complaints and opposition to sexual harassment and discrimination.

46. To justify this termination, Defendant McMachan fabricated several issues and completely disregarded the employee handbook, which required documentation and warnings.

47. Plaintiff Rosario was terminated in retaliation for reporting sexual harassment and discrimination on account of sex.

48. As a result of Defendants' actions, Plaintiff has suffered lost wages, lost overtime, emotional distress, and other losses. Plaintiff is also due liquidated damages and punitive damages as all of Defendants' actions were willful and with full knowledge of the law.

## AS A FIRST CAUSE OF ACTION
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

49. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

50. Defendants willfully employed Plaintiff in the afore-mentioned enterprise and failed to compensate Plaintiff for all hours worked during their employment.

51. Defendants failed to pay any wages for hours worked by Plaintiff as described herein and as is required by the FLSA. For those hours, Plaintiff was compensated nothing and therefore they were not paid the minimum hourly wage proscribed by law.

52. Defendants also failed to provide the overtime premium rate of one and a half times their regular hourly rate as is required by the FLSA for those hours for which they were not paid.

53. Defendants failed to compensate Plaintiff for all hours worked in violation of the FLSA.

54. Defendants' violation of the FLSA was willful.

55. Defendants' failure to comply with the FLSA caused Plaintiff to suffer loss of wages and other damages as described and demanded herein.

## AS A SECOND CAUSE OF ACTION
## VIOLATION OF NEW YORK LABOR LAW

56. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint as if same were set forth herein fully at length.

57. Plaintiff was employee of Defendants within the meaning of New York Wage Regulations (NYCRR Labor Section 138 et seq.).

58. Defendants' failure to comply with the New York Labor Law minimum wage protections caused Plaintiff to suffer loss of wages and interest thereon.

59. Defendants' failure to pay proper wages for each hour worked was willful.

60. Defendants also failed to pay overtime pay as is required by the New York Labor Law.

61. Defendants also failed to provide bonuses which were part of Plaintiffs' wages as defined by the New York Labor Law.

62. Defendants' violation of the New York Labor Law were willful.

63. On account of such violations, Defendants are liable to Plaintiff for actual, statutory and liquidated damages.

## AS A THIRD CAUSE OF ACTION FOR
## FOR DISCRIMINATION AND RETALIATION UNDER TITLE VII
## (AGAINST DEFENDANT TMCNY ONLY)

64. Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

65. Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer: "(1) to . . . discriminate against

any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

66. Plaintiff Rosario complains of Defendants' violation of Title VII's prohibition against discrimination in employment based, in whole or in part, upon an employee's gender (sexual harassment).

67. This claim is authorized and instituted pursuant to the provisions of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section(s) 2000e *et seq.*, for relief based upon the unlawful employment practices of the above-named Defendants.

68. Defendants engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e *et seq.* by discriminating against Plaintiff with respect to the terms, conditions or privileges of employment because of their opposition to the unlawful employment practices of Defendants.

## AS A FOURTH CAUSE OF ACTION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

69. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

70. The Administrative Code of City of NY § 8-107 [1] provides that, "It shall be an unlawful discriminatory practice: (a) For an employer or an employee or agent thereof, because of the actual or perceived age, race, creed, color, national origin, **gender,** disability, marital status, sexual orientation or alienage or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment such person or to discriminate against such person in compensation or in terms, conditions or privileges of employment."

71. Defendants violated the section cited herein as set forth.

## AS A FIFTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

72. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

73. The New York City Administrative Code Title 8, §8-107 (7) provides that it shall be unlawful discriminatory practice: "For an employer . . . to discharge . . . or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter. . ."

74. Defendant violated the section cited herein as set forth.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

75. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

76. The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person **to aid, abet, incite, compel, or coerce** the doing of any of the acts forbidden under this chapter, or attempt to do so."

77. Defendant engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory and unlawful conduct.

## AS A SEVENTH CAUSE OF ACTION FOR DISCRIMINATION
## UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

78. Plaintiff repeats, reiterates and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

79. New York City Administrative Code Title 8-107(19) **Interference with protected rights**. It shall be an unlawful discriminatory practice for any person to coerce, intimidate, threaten or interfere with, or attempt to coerce, intimidate, threaten or interfere with, any person in

the exercise or enjoyment of, or on account of his or her having aided or encouraged any other person in the exercise or enjoyment of, any right granted or protected pursuant to this section.

80. Defendant violated the section cited herein as set forth.

## JURY DEMAND

81. Plaintiff demands a trial by jury.

**WHEREFORE**, Plaintiff demands judgment against the Defendants:

A. Awarding all wages not paid and damages due as required under the FLSA and NYLL, plus liquidated damages under both the NYLL and the FLSA and interest;

B. Declaring that Defendants' policies and procedures violate the FLSA and NYLL;

C. Declaring that Defendants engaged in unlawful employment practices prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et. seq.;* and the New York City Administrative Code §8-107 *et. seq.*, in that Defendants discriminated against Plaintiff Rosario and retaliated against her on the basis of Plaintiff Rosario's opposition to discriminatory actions;

D. Awarding damages to the Plaintiff to otherwise make her whole for any losses suffered as a result of such unlawful employment practices including emotional and compensatory damages;

E. Awarding Plaintiff punitive and liquidated damages;

F. Awarding Plaintiff attorney's fees, costs, and expenses incurred in the prosecution of the action; and,

G. Awarding Plaintiff such other and further relief as the Court may deem equitable, just and proper to remedy the Defendants' unlawful employment practices.

Dated: Astoria, New York
       October 14, 2022

                                                **THE ROSE LAW GROUP, PLLC**

                                                **/s/Jesse C. Rose**
Jesse C. Rose (JR-2409)
3272 Steinway Street
Suite 503
Astoria, New York 11103
PH: (718) 989-1864
Fax: (917) 831-4595